**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

BYRON KEITH WILLIAMS,

        Petitioner,

v.                                    Case No. 09-14747

CARMEN PALMER,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DENYING A CERTIFICATE OF APPEALABILITY**

Petitioner Byron Keith Williams presents the court a habeas corpus petition

challenging his Macomb County, Michigan, convictions for possession with intent to

deliver cocaine and conspiracy to possess with intent to deliver cocaine.  He alleges

that the prosecutor committed misconduct during his trial, that the weight of the

evidence was insufficient to establish his guilt, and that the trial court erred when it

denied his motion for a directed verdict.  A portion of Petitioner's prosecutorial-

misconduct claim is procedurally defaulted, and the state court's adjudication of

Petitioner's remaining claims was objectively reasonable.  Accordingly, the petition is

denied.

**I.  BACKGROUND**

Petitioner was charged in Macomb County, Michigan, with (1) possession with

intent to deliver 1,000 or more grams of cocaine and (2) conspiracy to possess with

intent to deliver 1,000 or more grams of cocaine.  The charges arose from an incident in

which a police informant engaged in a surveilled transaction to buy a kilogram of cocaine from Petitioner in the parking lot of a CVS store.

At Petitioner's jury trial in Macomb County Circuit Court, Detective Jeffrey Swan testified that the operation was to occur on July 27, 2006, at Van Dyke Avenue and Outer Drive in Detroit.  Swan was seated in a perimeter car, waiting for a signal that the purchase had occurred.  The original location was to be a McDonald's restaurant, but it changed to the CVS store across the street from the McDonald's.  He did not see the actual takedown of the subjects, but he did enter the CVS parking lot and see some of the other officers holding a man on the ground.

Swan pursued a van that left the lot with two occupants.  The van became stuck in an alley overgrown with grass and weeds, where he and another officer, Detective Lehman, searched for suspects and found a kilo of cocaine which they turned over to Lieutenant Margosian, the leader of the operation.  The cocaine was contained in a plastic bag, which was resting on top of thick grass or weeds that had recently been run over by a vehicle.  The van had crashed through a cyclone fence and was still running, but it was unoccupied, and it was located about sixty yards away from the cocaine.

Detective Lucas Balch testified that he was part of the arrest team.  He and several other officers were seated in a large vehicle on Van Dyke Avenue where they could hear what was happening through radio contact with other officers.  When he and the other officers arrived at the CVS parking lot, they saw two men standing at the rear of a vehicle with its trunk open.  Balch and the other officers exited their vehicle, tackled

2

Petitioner and the informant, and arrested them.[1]  About the same time, Balch heard the squealing of tires and saw a van leaving the parking lot.  Sergeant Darren Bondy corroborated Balch's testimony.

Detective Randy Costanzo testified that he and another officer, Detective Doherty, assisted the narcotics team on July 27, 2006.  They drove into the CVS parking lot at the same time as the narcotics crew.  By the time Costanzo and Doherty exited their vehicle, the narcotics team had two suspects on the ground and under arrest.  Costanzo thought that the van, which left the area at the same time, was involved with the transaction taking place in the parking lot because it squealed its tires and drove away in a reckless manner.

Costanzo subsequently transported Petitioner to jail.  On the way there, Petitioner asked Costanzo whether the police had found the van, whether they had caught the men in the van, and whether they had let "Eric" go.[2]  Petitioner also said that the snitch would not be at his arraignment, and he wondered whether the police were going to forfeit his money.  Costanzo claimed that neither he nor Doherty had mentioned the van to Petitioner and that he did not think any of the officers had mentioned the name Eric.

The confidential informant testified that he had been working as such with the County of Macomb Enforcement Team.  He explained that he had been charged with a

---

[1] Consistent with ordinary practice, the crew made it appear that they were arresting both in order to protect the informant's identity. Balch did not actually know at the time which man was the informant.

[2] "Eric" was, in fact, the informant's first name.

3

number of crimes and that he was testifying pursuant to a plea agreement, which required the prosecutor to reduce or dismiss some of the charges against him in exchange for his testimony at Petitioner's trial.

He testified that, a day or two before the incident in question, he called Petitioner and told him that he would be needing a book from him in a couple of days.  The word "book" was slang for a kilo.  They discussed payment, and Petitioner quoted the price.

On July 27, 2006, the informant contacted Petitioner and told him that his cousin had called him and that he needed the book.  Petitioner asked for an hour.  The informant then updated Detective Lehman about what was going on.  Initially he told Lehman that he and Petitioner would be meeting at the McDonald's restaurant on Van Dyke Avenue and Outer Drive.  Petitioner later changed the location and said to meet him at the CVS store because he had been waiting so long at McDonald's.

Petitioner was standing next to the driver's side of a van in the CVS parking lot when the informant arrived at the CVS.  Petitioner entered the informant's car and asked for the money, saying that the "book" was "over there in the van."  Petitioner asked for the money again and the informant told him that the money was supposed to be in the trunk of his car.  The two of them got out of the car and Thomas opened the vehicle's trunk, which was the prearranged signal to the police that the "book" was there.  At that point, the police cars pulled up and the van sped off.  On cross-examination, the informant testified that he did not see any narcotics that day, that he actually had no money at the time, and that no money changed hands.

Detective Ron Lehman testified that he was an undercover officer who worked with the informant to set up a deal involving a kilo of cocaine.  He was in his car in the

4

CVS parking lot.  He saw Petitioner walking around the CVS parking lot and talking on his cell phone, and saw the informant arrive in his vehicle.  Petitioner entered the informant's vehicle and conversed with the informant, who subsequently exited the vehicle and opened the trunk of his car.  He knew that to be the signal that the informant had seen the cocaine or knew the cocaine was there.   Lehman notified Lieutenant Margosian that he had seen the arrest signal, and Margosian instructed the officers to move in.

A van that Lehman did not notice previously immediately left the area at a high rate of speed, squealing its tires and traveling northbound on Van Dyke.  Lehman was instructed to go after the van.  He followed it and eventually watched it disappear into an alley.  He did not follow the van into the alley because it was too unsafe.  Instead, he went to the next side street and drove parallel to the alley, stopping in the middle of the block.  From there, he observed a large man running out of the back yard of an abandoned house toward Lehman's car.  Lehman had already determined the identity of the owner of the van, and he recognized the man approaching him as Donald Otis Blanks, the registered owner of the van.  As Blanks ran back toward the alley, Lehman got out of his car and chased Blanks.  He did not catch him, but when Detective Swan arrived on the scene, the two of them entered the alley on foot.  They observed the van, which had crashed into the fence and was unoccupied, but still running.  The also saw a bright pink bag containing a cube of suspected cocaine on the ground.

Later that day or the next day, Lehman interviewed Petitioner, who asked about the charges against him and what the police were going to do for him.  Petitioner denied knowing the people in the van, but he asked Lehman whether someone had been

5

arrested in Macomb.  When asked whether he wanted to cooperate with the police, Petitioner inquired about the benefits of cooperating and whether he could get out of jail.

On cross-examination, Lehman agreed that he never saw Petitioner doing anything in relation to the van, that he did not find Petitioner's belongings in the van, and that Petitioner's fingerprints were not recovered from the van.  Lehman also testified that Petitioner never admitted to having any narcotics on him, in his vehicle, or at his residence, and that Petitioner never wrote out a statement.  Lehman also agreed that Petitioner made no specific admissions about possessing any narcotics or conspiring with anybody to possess narcotics.  Lehman also stated that he did not see anyone handling or throwing cocaine in the alley.

Lieutenant Detective Richard Margosian testified that he was the scene commander on July 27, 2006, and that he had about twelve officers on duty in four or five vehicles that day.  He testified that Petitioner came to the meeting location with the "source," expecting to exchange cocaine for a prearranged price of $20,500.  Margosian said that his informant had been instructed to meet Petitioner, look at the kilo, and tell Petitioner that the money was in the trunk.  Once the trunk was opened, the officers planned to move in and make an arrest.

Margosian also testified that the meeting location changed after the undercover officers arrived.  When Lehman advised Margosian over the radio that the trunk of the vehicle was open, Margosian gave the signal for the surveillance cars to move in and make the arrest.  He testified that no cocaine was found at the CVS location and that the informant never said he saw the cocaine.  The informant merely received a verbal

6

confirmation that the cocaine was there.  The cocaine recovered by the other officers

was later turned over to Margosian; it weighed 1004 grams without packaging.  No

fingerprints were found on the van or the cocaine.

Petitioner did not testify or present any witnesses at trial.  His attorney moved for

a directed verdict of acquittal at the close of the prosecutor's case, arguing to the

court—as he would later to the jury—that although Petitioner was present in the CVS

parking lot, there was no real evidence against him.  Counsel pointed out that there

were no fingerprints linking him to the van or the cocaine, nor was there any evidence

that Petitioner knew the occupants of the van.  He claimed that the informant was not

credible because he was merely looking out for himself by trying to get a deal in his own

criminal case.

On March 29, 2007, the jury found Petitioner guilty, as charged, of (1) possession

with intent to deliver one thousand grams or more of a mixture containing cocaine, in

violation of Michigan Compiled Laws section 333.7401(2)(a)(i), and (2) conspiracy to

possess with intent to deliver one thousand grams or more of a mixture containing

cocaine, in violation of Michigan Compiled Laws sections 333.7401(2)(a)(i) and

750.157a.  The trial court sentenced Petitioner to concurrent terms of twenty-five-to-fifty

years in prison.

The Michigan Court of Appeals affirmed Petitioner's convictions in an

unpublished, *per curiam* opinion.  *People v. Williams*, No. 278093, 2008 WL 4274426

(Mich. Ct. App. Sept. 18, 2008).  On January 27, 2009, the Michigan Supreme Court

denied leave to appeal because it was not persuaded to review the questions

presented.  *People v. Williams*, 759 N.W.2d 385 (Mich. 2009).

7

Petitioner filed his habeas corpus petition through counsel on December 7, 2009.

His claims read:

I.      Prosecutorial misconduct during the trial and in closing argument denied the defendant his due process rights to a fair trial, requiring reversal of his convictions pursuant to US Const Amends V, XIV; Mich Const. 1963, Art 1, Am. 17.

II.     The great weight of the evidence presented by the prosecutor was insufficient to establish beyond a reasonable doubt that the defendant, Byron Williams, was guilty of possession with intent to deliver one thousand grams or more of a mixture containing cocaine, MCL 333.7401(2)(A)(1), and conspiracy to possess with intent to deliver one thousand grams or more of a mixture containing cocaine.  US Const, Ams V, VI, XIV; Const 1963, Art 1, Sec. 17, 20.

III.    It was error to deny Defendant's motion for directed verdict as there was insufficient evidence at the time the motion was made to constitute a conviction.  US Const Am XIV.

In an answer to the petition, Respondent argues that Petitioner's first claim is procedurally defaulted because he failed to object to the alleged prosecutorial misconduct at trial.  Respondent asserts that Petitioner's second and third claims fail to raise an issue for which habeas corpus relief may be granted.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, state prisoners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

8

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786. To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on a claim "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

## III. DISCUSSION

9

## A.  Prosecutorial Misconduct

In support of his first habeas claim, Petitioner advances three alleged instances of prosecutorial misconduct that he claims deprived him of his right to a fair trial: first, that the prosecutor introduced facts not in evidence during closing arguments; second, that the prosecutor denigrated defense counsel during closing arguments; and third, that the prosecutor did not make a key prosecution witness available for interview by the defense until the morning of trial.  Petitioner procedurally defaulted the first two arguments, and the third argument is without merit.

### 1.  Procedural Default

Respondent contends that Petitioner's claims of prosecutorial misconduct during closing arguments[3] are procedurally defaulted because Petitioner did not object to the

---

[3] During closing arguments, the prosecutor argued that Petitioner changed the location of the cocaine transaction from the McDonald's parking lot to the CVS parking lot across the street because he was nervous.  (Trial Tr. vol. 3, at 21, Mar. 29, 2007, Dkt. # 5-8.)  Petitioner claims that there was no evidence he was nervous and that the prosecutor made the comment to show Petitioner's state of mind.

Petitioner also faults the prosecutor for arguing that Petitioner had arrived at the scene in the van that later sped out of the parking lot as Petitioner was arrested.  (*Id.* at 25.)  Petitioner claims there was no evidence that he arrived in the van, was present in the van, or was associated with the driver of the van.

Petitioner complains also that the prosecutor denigrated defense counsel:

I've been talking with Lieutenant Margosian and I can't come up with a real adequate analogy for what I'm perceiving the defense to be in this case from the questioning.  The best I can think of is its (sic) kind of like an ostrich with his head in the sand.  It's kind of like you didn't catch me with it in my hand, nah nah, now you can't charge me, or nah nah, you can't catch me.  Well, I can see all the rest of you and all the rest of the

evidence.  I can tell you're an ostrich.  I don't care if I can see your head or not.  That's the closest I could come.

10

prosecutor's arguments during trial.  A claim is procedurally defaulted and may not be considered by a federal court on habeas review "[w]hen a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim."  *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977), and *Picard v. Connor*, 404 U.S. 270, 275-80 (1971)).  Three elements must be satisfied before a claim may be considered procedurally defaulted:  "(1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim."  *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003).

The state procedural rule at issue here is Michigan's contemporaneous-objection rule, which requires a criminal defendant to object to purported prosecutorial misconduct during trial or to request a curative jury instruction in order to preserve the issue for appellate review.  *People v. Brown*, 755 N.W.2d 664, 679 (Mich. Ct. App. 2008).  Petitioner concedes that he failed to object to the prosecutor's contested remarks during trial, and the Michigan Court of Appeals enforced the contemporaneous-objection rule by reviewing Petitioner's claims about the prosecutor's comments only for

---

(*Id.* at 22-23.)   Petitioner claims that these comments characterized the defense in a mocking and degrading fashion and painted defense counsel as inadequate and as someone who was trying to mislead the jury.

"plain error."[4]  "[A] state appellate court's plain-error review of a procedurally defaulted claim does not waive the procedural default," and "the contemporaneous-objection rule is an adequate and independent state ground barring federal habeas review." *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1002 (2011).  All three elements of procedural default are satisfied here.  Petitioner violated a state procedural rule, the last state court to review his claim in a reasoned opinion enforced the rule, and the state court's reliance on the rule was an adequate and independent state ground foreclosing review of the federal claim.

Consequently, federal habeas review of Petitioner's claims based on the prosecutor's closing arguments "is barred unless [he] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Colelman v. Thompson*, 501 U.S. 722, 750 (1991).  Petitioner has not advanced any argument in support of a finding of "cause" for his failure to make a contemporaneous objection to the prosecutor's remarks.  The court therefore is not required to determine whether Petitioner was prejudiced by the alleged constitutional violation in order to conclude that there is no excuse for his procedural default.  *Tolliver v. Sheets*, 594 F.3d 900, 930 n.13 (6th Cir.), *cert. denied*, 131 S. Ct. 605 (2010).

---

[4] The Court of Appeals determined that the prosecutor's comments about the evidence did not constitute plain error and that Petitioner had failed to show the remarks affected a substantial right.  The Court of Appeals found that the prosecutor's "head in the sand" argument was not an attack on Petitioner or on defense counsel.  The Court of Appeals concluded that Petitioner could not show either plain error or that the jury convicted him on the basis of the prosecutor's statements and, therefore, Petitioner forfeited his challenge to the prosecutor's remarks.

Petitioner does argue that the prosecutor's comments amounted to "plain error" affecting his substantial rights and that failure to consider the issue will result in a miscarriage of justice. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To be credible, however, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner's burden "is to demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Petitioner has not presented the court with any new evidence in support of a claim of actual innocence, and the evidence against him was substantial. *See infra* Section III.C. A miscarriage of justice will not occur as a result of the court's failure to adjudicate the substantive merits of Petitioner's allegations of prosecutorial misconduct during closing argument. The claim is procedurally defaulted and barred from substantive review.

### 2. The Prosecutor's Failure to Make a Witness Available Before Trial

Petitioner also asserts that the prosecutor deprived his attorney of an opportunity to interview a key prosecution witness—the police informant—before trial. Petitioner claims that his trial attorney made several attempts to interview the informant before trial, but the prosecutor did not make him available until the first day of trial. Petitioner

13

contends that the last-minute timing of the interview prejudiced his attorney's trial preparations.

This claim is not procedurally defaulted because defense counsel objected at trial.[5]  The Michigan Court of Appeals, moreover, treated the claim as a preserved error of prosecutorial misconduct.  The Court of Appeals then analyzed the merits of Petitioner's claim and concluded that the prosecutor did not commit misconduct and that the timing of the interview did not impact Petitioner's right to a fair and impartial trial.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."  *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  To prevail on his claim, Petitioner must demonstrate that the prosecutor's conduct infected the trial with such unfairness "as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Courts in this Circuit "engage[] in a two step inquiry to determine whether the prosecutorial misconduct rises to the level of unconstitutionality.  'To satisfy the standard for prosecutorial misconduct, the conduct must be both improper and

_____

[5] Defense counsel requested discovery regarding the informant on January 30, 2007, almost two months before trial.  Counsel subsequently objected when the prosecutor sought to amend the witness list to include the informant.  Defense counsel sought to preclude him from testifying on the ground that the prosecutor did not identify him by name until March 14, 2007.  The prosecutor, however, had agreed to inform the witness that the defense attorney wanted to interview him.  The trial court denied defense counsel's motion to preclude the witness.  The court nevertheless adjourned the trial for one week so that defense counsel could investigate and perhaps interview the informant.  (Proceedings Tr. 3-12, Mar. 21, 2007, Dkt. # 5-5.)

On the first day of trial, defense counsel stated that she did conduct an interview but that he had not been available until that morning.  Defense counsel placed an objection on the record, arguing that the witness should have been made available to her on a more timely basis.  (Trial Tr. vol. 1, at 3-4, Mar. 27, 2007, Dkt. # 5-6.)

14

flagrant.'" *Matthews v. Parker*, 651 F.3d 489, 505 (6th Cir. 2011) (quoting *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006)).  Claims of prosecutorial misconduct also are subject to harmless-error analysis.  *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).

At the pretrial conference in this case, the prosecutor stated that he had asked the detective to tell the informant that defense counsel wanted to interview him.  The prosecutor further noted that he could not force the informant to be interviewed. (Proceedings Tr. 9, Mar. 21, 2007, Dkt. # 5-5.)  A week later, on the first day of trial, defense counsel complained that the prosecution did not make the witness available until that morning.  However, when the trial court asked defense counsel how she was prejudiced by the timing of the interview, defense counsel's only comment was that she needed more time to discuss the matter with Petitioner.  The trial court responded by noting that defense counsel would have at least two hours to talk with Petitioner over the lunch hour and that she could also discuss the matter with Petitioner that evening. After the lunch break, defense counsel stated that she had discussed the issue with Petitioner over the lunch hour.  She had no further objections to make regarding the timing of her interview with the informant.  (Trial Tr. vol. 1, at 12-13, Mar. 27, 2007, Dkt. # 5-6.)

The court concludes, as did the Michigan Court of Appeals, that even if the prosecutor were to be presumed to have been in such control of the witness so as to "make him available" on demand and remiss in not doing so until the day of trial, there is still no showing of prejudice to Petitioner.  Any alleged error in this regard was

harmless, and Petitioner is not entitled to the writ of habeas corpus on the basis of this claim.

## B. The Weight and Sufficiency of the Evidence

Petitioner's second habeas claim alleges that the great weight of the evidence was insufficient to establish his guilt, and his third habeas claim alleges that the trial court erred by denying Petitioner's motion for a directed verdict of acquittal because there was insufficient evidence to convict him. The contention that the trial court erred by refusing to enter a directed verdict is a state-law claim not cognizable on federal habeas review. *King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). However, Petitioner does raise a constitutional argument by claiming that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Petitioner argues that there was no physical evidence linking him to either the cocaine or to Mr. Blanks and that the prosecution's case was based on circumstantial evidence, speculation, and misstatements of the facts.

The Supreme Court held in *Jackson v. Virginia*, 443 U.S. 307 (1979),

> that a conviction with insufficient evidence violates the defendant's federal due process rights. To determine whether sufficient evidence supports a particular conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*White v. Steele*, 602 F.3d 707, 709 (6th Cir. 2009) (internal citation omitted) (citing *Jackson*, 443 U.S. at 316, 319). The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.

16

"[A]fter AEDPA, federal courts reviewing state habeas claims accord a double layer of deference" to sufficiency-of-the-evidence claims. *White*, 602 F.3d at 710. First, the court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson*, 443 U.S. at 319). Second, if the court were to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, the court must still defer to the state appellate court's sufficiency determination, so long as it was not unreasonable. *Id.* (citing 28 U.S.C. § 2254(d)(2)).

### 1. Possession with Intent to Deliver

The first count against Petitioner was possession with intent to deliver 1,000 or more grams of cocaine. The elements of this offense are: "(1) that the recovered substance is a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the substance intending to deliver it." *People v. McGhee*, 709 N.W.2d 595, 612 (Mich. Ct. App. 2005).

Lieutenant Margosian testified that the cocaine recovered by the police weighed 1,004 grams without packaging (Trial Tr. vol. 2, at 174, Mar. 28, 2007, Dkt. # 5-7), and no one disputed that the recovered cocaine was a narcotic that Petitioner was not authorized to possess. Thus, the first three elements of the offense were proved beyond a reasonable doubt, and the only question is whether Petitioner knowingly possessed the cocaine with intent to deliver it.

Actual physical possession is not required to meet the possession element. Instead, possession may be either actual or constructive. Constructive

17

possession of an illegal substance signifies knowledge of its presence, knowledge of its character, and the right to control it.

Because it is difficult to prove an actor's state of mind, only minimal circumstantial evidence is required. Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of possession. Circumstantial evidence that a defendant had the exclusive control or dominion over property on which contraband narcotics are found is sufficient to establish that the defendant constructively possessed the drug.

*McGhee*, 709 N.W.2d at 612 (citations omitted).

The testimony in this case established that:

[The police informant] . . . arranged to purchase a kilogram of cocaine from [Petitioner] for $20,500. [The informant] and [Petitioner] agreed upon a place where the transaction was to occur. Because [the informant] kept [Petitioner] waiting, [Petitioner] moved the location of the cocaine sale to a parking lot across the street. After [the informant] arrived at the parking lot, [Petitioner] asked to see the money, and [the informant], in turn, asked [Petitioner] where the cocaine was located. [Petitioner] responded that the cocaine was located in the van. Soon afterward, the police arrived at the parking lot, and the van sped away from the scene. The van, driven and owned by Donald Blanks, led the police on a high-speed chase that ended in an alley overgrown with vegetation. The police discovered the abandoned van in the alley. Detective Ron Lehman observed Blanks running away from the scene. The police recovered a package containing over one kilogram of cocaine about 60 yards from the van, lying in an area that had been run over by the van's tires.

*Williams*, 2008 WL 4274426, at *7. A rational trier of fact could have inferred from this evidence and from the large quantity involved in the transaction that Petitioner constructively possessed cocaine for sale and intended to deliver it to the police informant.

Petitioner alleges that there was no evidence showing that he possessed or controlled the cocaine at any time or that he had any connection to Donald Blanks, the driver of the van. He points to the absence of physical evidence linking him to the van,

18

the fact that his fingerprints were not found on the cocaine, and the fact that he had no cocaine on him when he was arrested.

A court does not look to facts that are absent in determining evidentiary sufficiency, but rather to the facts that were presented. Many imaginable "facts" are absent in every case, including this one. There was, for example, no signed and videotaped confession. There was no cocaine found in Petitioner's grasp. Petitioner did not own the van. Petitioner was not seen driving the van or even in it. There was no parade of independent, unimpeachable witnesses directly supporting each and every claim of the informant. But despite the absence of fingerprints on the recovered drugs, and even though no cocaine was found physically in Petitioner's grasp, his pointed question to the informant—"Where is the money?"—and his comment to Thomas that the cocaine—the "book"—was in the van, were capable of being credited by a rational jury, and stand as clear enough indications that Petitioner knew there was cocaine in the van, that he had control over the cocaine, and that he intended to deliver it for a sum of money. The prosecutor therefore presented enough evidence to allow a reasonable trier of fact to conclude that Petitioner knowingly possessed at least 1,000 grams of a substance containing cocaine and that he intended to deliver it.

## 2. Conspiracy to Possess Cocaine

Petitioner also was charged with conspiracy to possess with intent to deliver 1,000 or more grams of cocaine. To be convicted of this offense, the prosecution had to "prove that (1) the defendant possessed the specific intent to deliver the statutory minimum as charged, (2) his coconspirator possessed the specific intent to deliver the statutory minimum as charged, and (3) the defendant and his coconspirator possessed

19

the specific intent to combine to deliver the statutory minimum as charged to a third person." *People v. Hunter*, 643 N.W.2d 218, 221 (Mich. 2002) (quoting *People v. Justice*, 562 N.W.2d 652, 659 (Mich. 1997)).

The weight of the cocaine was not contested, and the evidence summarized above established that Petitioner not only constructively possessed cocaine, but that he had the specific intent to deliver the cocaine to Eric Thomas. The fact that Donald Blanks was identified as the driver of the van, which fled from the CVS parking lot as Petitioner was arrested and which was abandoned near the site of more than 1,000 grams of cocaine, is an indication that Blanks likewise possessed the specific intent to deliver 1,000 or more grams of cocaine. Petitioner was linked to Blanks and the van by his presence next to the van in the CVS parking lot, by his comment to Thomas that the cocaine was in the van, and by his subsequent questions to the police about whether the police caught the men in the van. A rational trier of fact could have inferred from the evidence that Petitioner and Blanks agreed to possess the statutory amount of cocaine with intent to deliver it to Thomas.

Therefore, the conclusion of the Michigan Court of Appeals that the prosecution presented sufficient evidence with respect to each element of the charged crimes is supported by the record and was objectively reasonable. The state court's decision was not contrary to, or an unreasonable application of, *Jackson*, and Petitioner has no right to relief on the basis of his second and third claims.

## IV.  CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability]."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A habeas petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 1983)).

In this case, the court does not believe that reasonable jurists could debate Petitioner's procedural default of any claims relating to the prosecutor's closing arguments.  Similarly, in the court's estimation, reasonable jurists would not debate that, in rejecting Petitioner's remaining prosecutorial misconduct claim and his challenge to the sufficiency of the evidence, the Michigan Court of Appeals rendered a decision that was not contrary to or an unreasonable application of relevant Supreme Court precedent.  Thus, the court declines to issue a certificate of appealability.

## V.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas corpus [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.


                    s/Robert H. Cleland                    
                    ROBERT H. CLELAND
                    UNITED STATES DISTRICT JUDGE

Dated:  January 23, 2012


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 23, 2012, by electronic and/or ordinary mail.

                    s/Lisa Wagner                    
                    Case Manager and Deputy Clerk
                    (313) 234-552